

**Michael J. Willemin**
mwillemin@wigdorlaw.com

September 29, 2025

<u>VIA ECF</u>

Hon. Joan M. Azrack
United States District Judge
100 Federal Plaza, Courtroom 1020
Central Islip, New York 11722

      Re:    <u>Marrazzo v. Flagstar Financial, Inc., *et al.*, Case No. : 2:25-cv-04183</u>

Dear Judge Azrack:

We represent Plaintiff Ross Marrazzo ("Plaintiff" or "Mr. Marrazzo") in the above-referenced matter and write in opposition to Defendants Flagstar Financial, Inc. and Alessandro DiNello's (collectively "Defendants") Letter Motion requesting a pre-motion conference, or, alternatively, leave to move to dismiss the Complaint. Dkt. No. 17.

**I.    Count I Alleges Clear Protected Activity**

Pursuant to the Sarbanes Oxley Act of 2002's ("SOX") whistleblower protection provisions, no publicly traded employer may "discharge . . . or in any other manner discriminate against an employee in the terms and conditions of employment because of" certain whistleblowing activities. 18 U.S.C. § 1514A(a). At the motion to dismiss stage, Plaintiff only "bears the initial burden of making a *prima facie* showing of retaliatory discrimination." <u>Leshinsky v. Telvent GIT, S.A.</u>, 10 Civ. 4511 (JPO), 2013 WL 1811877 at *6 (S.D.N.Y. May 1, 2013) (citations omitted). To make out a claim, a plaintiff must plead that "'(1) he . . . engaged in a protected activity; (2) the employer knew that he . . . engaged in the protected activity; (3) he . . . suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action.'" <u>Callahan v. HSBC Sec. (USA) Inc.</u>, 723 F. Supp. 3d 315, 323 (S.D.N.Y. 2024) (quoting <u>LaBelle v. Barclays Cap. Inc.</u>, No. 23 Civ. 448, 2024 WL 878909, at *1 (2d Cir. Mar. 1, 2024)). Importantly, an employee need only "reasonably believe" that the activity he reported violated securities regulations. <u>Murray v. UBS Sec., LLC</u>, 601 U.S. 23, 27 (2024). This amounts to an "extremely low burden" for a SOX plaintiff. <u>Baldassario v. Sec. Servs. of Conn., Inc.</u>, No. 3:03 Civ. 308 (MRK), 2004 WL 1402417, at *1 (D. Conn. June 15, 2004).

Defendants argue that Plaintiff "fails to plausibly allege that he reasonably believed DiNello's conduct violated any enumerated SOX statute." Dkt. No. 17 at 1. To state a SOX whistleblower claim, a plaintiff need not "show an actual violation of the law, nor must a plaintiff cite a particular statute that he believed was being violated." <u>Mahony v. KeySpan Corp.</u>, No. 04 Civ.


554, 2007 WL 805813, at *5 (E.D.N.Y. Mar. 12, 2007). Plaintiff names specific New York Stock Exchange ("NYSE") rules in his Complaint and refers to Securities and Exchange Commission ("SEC") regulations regarding money laundering and insider trading. See Sharkey v. J.P. Morgan Chase & Co., 805 F. Supp. 2d 45, 58 (S.D.N.Y. 2011) (holding that a SOX whistleblower made out a *prima facie* case where she blew the whistle on, among other violations, money laundering and insider trading). Insider trading violates SEC regulations and is a form of fraud. See, e.g., United States v. O'Hagan, 521 U.S. 642, 651 (1997); see also 17 CFR § 240.10b-5. There can be no question that the reporting of insider trading is protected by SOX's whistleblower provisions. The NYSE, for its part, is under the regulatory oversight of the SEC, and its rules are filed with and approved by the SEC subject to 15 U.S.C. § 78s. See https://www.nyse.com/regulation/rules. Defendants cite an administrative law case decided before Murray for the proposition that the rules of the NYSE do not constitute SEC regulations for the purpose of SOX. Dkt. No. 17 at 1; see also Murray, 601 U.S. at 27 (holding that a SOX whistleblower need only have a "reasonable belief" that securities regulations had been violated). Plaintiff believed that violations of the NYSE rules constituted violations of SEC regulations, and that belief was reasonable based on the grounding of the NYSE rules in the Securities and Exchange Act of 1934 and the oversight the SEC maintains over that organization. These facts are also pleaded with more than sufficient specificity to make out a SOX whistleblower claim at this stage in the litigation.

Defendants' contention that Plaintiff failed to report his concerns to Flagstar is laughable. On a motion to dismiss, he is only required to show that "the employer knew that he . . . engaged in the protected activity." Callahan, 723 F. Supp. 3d at 323. SOX explicitly protects an individual who assists "in an investigation regarding . . . conduct" and "provid[ing] information . . . to . . . a person with supervisory authority over the employee" where he reasonably believes that such information and conduct concerns securities fraud or a violation of SEC regulations. 18 U.S.C. § 1514A(a)(1). Further, the act of providing information to the company regarding an investigation is protected. Sharkey, 805 F. Supp. 2d at 56 (holding that a plaintiff's action in reporting her investigation findings to a company constituted protected whistleblowing activity under SOX). "A complainant need not express a concern in every possible way or at every possible time in order to receive protection, so long as the complainant's actual communications 'provide information, cause information to be provided, or otherwise assist in an investigation' regarding a covered violation." Klopfenstein v. PCC Flow Technologies Holdings, Inc., ARB Case No. 04-149, 2004-SOX-11 (May 31, 2006) (quoting 18 U.S.C.A. § 1514A(a)(1)). Here, Claimant's investigation, and his interview of DiNello, constitute protected activity and were sufficient to have made DiNello aware that he was under investigation for securities violations.

## II.    Counts II and III are Meritorious

Plaintiff has pleaded a meritorious breach of contract claim. His claim under the New York Labor Law ("N.Y.L.L.") has therefore also been adequately pleaded.

Defendants contend that Count II of Plaintiff's Complaint, the breach of contract claim, "fails for non-satisfaction of conditions precedent," that is, Plaintiff's failure to sign a general release.


However, Plaintiff was never offered a severance agreement that amounted to his contractual $333,333 lump sum severance payout. Instead, Flagstar provided him with a release in exchange for only three months of severance (which were to be provided while he worked a "transition period" for the bank). "[P]ursuant to New York's prevention doctrine, a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition." DiBartolo v. Segal Grp., Inc., No. 23 Civ. 06095 (JHR), 2025 WL 2172643, at *9 (S.D.N.Y. July 31, 2025) (quotation omitted, cleaned up). In the DiBartolo case, as here, the employer "rendered the performance of the condition precedent (i.e., signing a release) impossible . . . by refusing to offer in consideration for the release the amount on which the parties had agreed" in Plaintiff's employment contract. Id. (quotation and citation omitted). Defendants' contractual obligation that they offer Plaintiff the severance to which he was entitled cannot be obviated by their choice to present him with a smaller sum of money and demand that he release his litigation rights for that lesser sum.

Count III is also meritorious. New York's labor law defines wages as "the earnings of an employee for labor or services rendered." N.Y.L.L. § 190(1). The labor law prohibits employers from making "any deduction from the wages of an employee," absent certain exceptions that are not applicable. N.Y.L.L. § 190(1). While payments that are discretionary or part of an incentive plan have been held to fall outside of the strictures of that statute, Plaintiff's severance did not fall into those categories. Rather, "its payment was guaranteed and non-discretionary as a term and condition of his employment." Ryan v. Kellogg Partners Institutional Servs., 19 N.Y.3d 1, 16 (2012). Plaintiff has adequately pleaded that Defendants will be liable under the N.Y.L.L.

**III.    Plaintiff Has Sufficiently Pleaded that DiNello can be Held Personally Liable**

Finally, DiNello can be held liable in this case. Plaintiff sets forth in the Complaint that DiNello threatened to fire him. DiNello also knew that he engaged in his protected activity, because Plaintiff interviewed him as part of his investigation. Viewing the facts in the light most favorable to the Plaintiff, as the Court must do on a motion to dismiss, a causal connection can be drawn between DiNello's threat and Plaintiff's termination soon after. See Wiest v. Lynch, 15 F. Supp. 3d 543, 566 (E.D. Pa. 2014).

Plaintiff does not intend to maintain his claims sounding in contract against DiNello individually.

**IV.    Conclusion**

Plaintiff reserves the right to amend his Complaint following the filing of any responsive pleading by Defendants. We thank the Court for its time and attention.

Respectfully submitted,

Michael J. Willemin