**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ROSS MARRAZZO,<br><br>              Plaintiff,<br>        v.<br><br>FLAGSTAR FINANCIAL, INC. and<br>ALESSANDRO DINELLO,<br><br>              Defendants. | Case No. 2:25-CV-04183 |

**[CORRECTED] MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.  Factual Background ................................................................................................... 2

    A.  Plaintiff's Employment at NYCB ................................................................ 2

    B.  The "BSA Tipping Incident" ........................................................................ 3

    C.  The "Reported HR Concern" ........................................................................ 4

    D.  The "NYSE Rules Investigation" ................................................................. 4

    E.  Plaintiff's Termination .................................................................................. 4

    F.  Plaintiff's Employment Agreement .............................................................. 4

II.  Procedural History .................................................................................................... 5

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ....................................................................................................................... 7

I.  The SOX Retaliation Claim Fails Because Plaintiff Does Not Plead Any Instance of Protected Activity Satisfying All Elements Under SOX (Count I). ........................... 7

    A.  The BSA Tipping Incident Is Not Protected Activity. ................................. 8

    B.  The Reported HR Concern Is Not Protected Activity. ................................ 10

    C.  The NYSE Rules Investigation Is Not Protected Activity. ......................... 10

        1.  Plaintiff's NYSE Rules Allegations Fail Because NYSE Rules Are Not SEC Rules or Regulations. ................................. 11

        2.  Plaintiff's Money Laundering and Insider Trading Allegations Fail for Multiple Reasons. ....................................... 12

II.  The NYLL § 740 Claim Fails for the Same Reasons (Count IV). ................................. 13

III.  The Retaliation Claims Fail as to DiNello Individually (Counts I and IV). .................... 14

IV.  The Breach of Contract Claim Fails for Non-Satisfaction of Conditions Precedent (Count II). ........................................................................................................ 16

V.  The NYLL § 193 Claim Fails Because Contingent Severance Is Not "Wages" (Count III). ....................................................................................................... 18

CONCLUSION .................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..............................................................................................................2, 6

*Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd.,*
  2011 WL 666187 (S.D.N.Y. Feb. 9, 2011).....................................................................6, 17, 19

*Cueto v. Jura Pentium Inc.,*
  2025 WL 1673221 (N.Y. Sup. Ct. June 13, 2025)................................................................13

*Dejesus v. HF Mgmt. Servs., LLC,*
  726 F.3d 85 (2d Cir. 2013)...................................................................................................6

*Erhart v. BofI Holding, Inc.,*
  612 F. Supp. 3d 1062 (S.D. Cal. 2020).................................................................................9

*Henrich v. Ecolab, Inc.,*
  ARB No. 05-030, 2006 WL 6583249 (ARB June 29, 2006)...............................................9, 12

*Kramer v. Time Warner Inc.,*
  937 F.2d 767 (2d Cir. 1991).................................................................................................3

*L–7 Designs, Inc. v. Old Navy, LLC,*
  647 F.3d 419 (2d Cir. 2011)..................................................................................................6

*La Belle v. Barclays Cap. Inc.,*
  2024 WL 878909 (2d Cir. Mar. 1, 2024)...........................................................................8, 11

*La Belle v. Barclays Cap. Inc.,*
  664 F. Supp. 3d 391 (S.D.N.Y. 2023)...............................................................................9, 13

*Levy v. Verizon Info. Servs., Inc.,*
  498 F. Supp. 2d 586 (E.D.N.Y. 2007) ................................................................................18

*MHR Cap. Partners LP v. Presstek, Inc.,*
  912 N.E.2d 43 (N.Y. 2009)..............................................................................................16, 17

*Mozingo v. S. Fin. Grp., Inc.,*
  No. 2007-SOX-00002, 2006 WL 6576823 (ALJ Dec. 6, 2006)............................................11

*Munroe v. Truveris Inc.*,
  Index No. 650454/2017, Doc. No. 155 (N.Y. Sup. Ct. June 12, 2019) ...................................17

*Napoli v. Deluxe Corp,* 2019 WL 2579348 (E.D.N.Y. June 21, 2019). ........................................17

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016)..................................................................................................6

*Nielsen v. AECOM Tech. Corp.*,
  762 F.3d 214 (2d Cir. 2014)........................................................................................ passim

*O'Grady v. BlueCrest Cap. Mgmt. LLP*,
  111 F. Supp. 3d 494 (S.D.N.Y. 2015).............................................................................6, 17, 18

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
  660 N.E.2d 415 (N.Y. 1995)................................................................................................16

*Patrowich v. Chem. Bank*,
  63 N.Y.2d 541 (1984) .......................................................................................................15

*Sharkey v. J.P. Morgan Chase & Co.*,
  2013 WL 10796833 (S.D.N.Y. Mar. 12, 2013) .......................................................................12

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008)..................................................................................................3

*Tierney v. Capricorn Invs., L.P.*,
  592 N.Y.S.2d 700 (N.Y. App. Div. 1993) ..............................................................................18

*Truelove v. Ne. Cap. Advisory, Inc.*,
  738 N.E.2d 770 (N.Y. 2000)................................................................................................18

*Wadler v. Bio-Rad Labs., Inc.*,
  916 F.3d 1176 (9th Cir. 2019) ............................................................................................11

*Wiest v. Lynch*,
  15 F. Supp. 3d 543 (E.D. Pa. 2014) ...............................................................................14, 15

*Zhang v. Centene Mgmt. Co., LLC*,
  2023 WL 2969309 (E.D.N.Y. Feb. 2, 2023)...........................................................................13

**STATUTES**

18 U.S.C. § 1514A(a) ...................................................................................................... passim

NYLL § 190 ....................................................................................................................18

NYLL § 193 .............................................................................................................. passim

NYLL § 198 ....................................................................................................................18

NYLL § 740 .............................................................................................................. passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)............................................................................................ passim

Fed. R. Evid. 201(b)(2) ....................................................................................................3

**INTRODUCTION**

Plaintiff Ross Marrazzo, a former compliance executive at Flagstar Financial, Inc., was lawfully terminated from his position.[1] He now seeks to challenge that outcome through a lawsuit that fails to state a viable legal claim. Plaintiff's Amended Complaint asserts whistleblower retaliation claims under federal and state law, yet he identifies no single instance of protected activity satisfying all legal elements. He also seeks severance payments despite never signing the release that was a pre-condition for severance under his employment agreement. He fails to seek "wages" in his wage-law claim or state a cognizable claim against Defendant DiNello. Each of Plaintiff's four claims fails as a matter of law and should be dismissed.

Plaintiff's retaliation claims under the Sarbanes-Oxley Act ("SOX") and New York Labor Law ("NYLL") § 740 suffer from a fundamental defect: he cannot demonstrate a single instance of protected activity that independently satisfies the required elements. Instead, Plaintiff attempts to cobble together three disparate incidents—a disagreement over a customer account, a vague "human resources concern," and an investigation of New York Stock Exchange ("NYSE") rules compliance—none of which, individually or collectively, sustains a retaliation claim. Examined separately, these allegations are conclusory, based on purported internal beliefs never actually reported, or untethered to any SOX-enumerated category of fraud. Plaintiff cannot selectively combine allegations to construct a claim not supported by the pleadings; each alleged instance of protected activity must independently satisfy every element. None satisfies these requirements.

The claims against Defendant DiNello individually are similarly deficient. The Amended Complaint is conspicuously silent regarding who decided to terminate Plaintiff, and it nowhere

---

[1]   In October 2025, Flagstar Financial, Inc., merged with and into its wholly owned subsidiary, Flagstar Bank, N.A., with Flagstar Bank, N.A., now the surviving entity and public company. Accordingly, for ease of reference in this Motion to Dismiss, Flagstar Financial, Inc., will be referred simply as "Flagstar."

alleges that DiNello—who served as Executive Chairman, President, and CEO for less than two months *before* Plaintiff was terminated—made, influenced, or even knew about that decision. Without such specific allegations, there is no basis for individual liability.

Finally, Plaintiff's breach of contract and wage claims fail for a straightforward reason: his employment agreement expressly conditioned severance on the execution of a general release, which Plaintiff does not allege he ever signed. Under New York law, strict compliance with express conditions precedent is required, rendering Plaintiff's failure to satisfy this condition fatal to his claim. Moreover, contingent compensation that was never earned does not constitute a "wage" protected by law.

For these reasons, the Amended Complaint should be dismissed with prejudice and in its entirety.

## BACKGROUND

**I.** **Factual Background** [2]

**A.** **Plaintiff's Employment at NYCB**

In 2022, New York Community Bancorp, Inc. ("NYCB"), hired Plaintiff, a subject matter expert in regulatory compliance, as Enterprise Chief Compliance Officer. (Am. Compl. ¶¶ 1, 14, 16.) Plaintiff reported to NYCB's President and CEO, Thomas Cangemi. (*Id.* ¶ 16.)

Between December 2022 and March 2023, NYCB acquired Flagstar Bank and certain assets and liabilities of Signature Bank. (*Id.* ¶ 22.) Plaintiff's responsibilities included overseeing the consolidation of NYCB compliance programs with those of Flagstar and Signature. (*Id.* ¶ 17.)

In early 2024, NYCB underwent significant changes in leadership and ownership. (*Id.* ¶ 25.) For a brief period beginning February 7, 2024, Defendant Alessandro DiNello—who had

---

[2] The facts set forth herein are drawn from the Amended Complaint and documents integral to it. Defendants accept these facts as true solely for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

previously served as President, CEO, and Chairman at Flagstar—became Executive Chair, and then also President and CEO, of NYCB. (NYCB Current Report (Form 8-K), at Item 5.02 (Feb. 23, 2024), available at https://bit.ly/4rmVlss; NYCB Current Report (Form 8-K), at Item 5.02 (Feb. 6, 2024), available at https://bit.ly/3MJaJjI.[3]) Around this time, Plaintiff assumed additional responsibilities as Interim Chief Risk Officer and began reporting directly to DiNello. (Am. Compl. ¶¶ 1, 18, 25.) However, less than two months later, effective April 1, 2024, Joseph Otting became President and CEO, and DiNello changed roles to Non-Executive Chairman; accordingly, after that date, Plaintiff no longer reported to DiNello. (NYCB 2023 Annual Report (Form 10-K), at 27 (Mar. 14, 2024), available at https://bit.ly/3MiTLsa.)

### B.    The "BSA Tipping Incident"

Plaintiff alleges that in February 2024, after Flagstar's anti-money laundering ("AML") monitoring program flagged a longtime customer's account for structuring deposits, Plaintiff emailed DiNello that the account would be closed. (Am. Compl. ¶¶ 29, 33, 34.) According to Plaintiff, DiNello and Plaintiff had a difference of opinion on appropriate next steps: DiNello responded asking Plaintiff to keep the account open and speak to the customer, but Plaintiff closed the account notwithstanding DiNello's request. (*Id.* ¶¶ 34–37.) Plaintiff alleges that in a later meeting, DiNello indicated that he had spoken to the customer at some time not specified in the Amended Complaint. (*Id.* ¶ 40.) Plaintiff then alleges that after Plaintiff stated he "would do it again," meaning "closing the account," DiNello allegedly told Plaintiff, "I would fire you if you did." (*Id.* ¶ 43.) Plaintiff speculates, "It is likely DiNello informed the client of the Bank's

---

[3]    The Court may take judicial notice of the existence and contents of SEC filings at the Rule 12(b)(6) stage. *See* Fed. R. Evid. 201(b)(2); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (courts may consider public disclosure documents required by law and filed with the SEC on a motion to dismiss); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (courts may take judicial notice of publicly filed documents to establish what was disclosed to the market). Judicial notice here is for the fact of the role-change disclosures and timing set forth in the filings, not to prove any disputed factual assertions within the documents.

investigation," and "DiNello may also have informed the client that a SAR could be filed," in violation of the Bank Secrecy Act ("BSA"). (*Id.* ¶ 42.)

### C.    The "Reported HR Concern"

Plaintiff alleges that sometime in early 2024, a junior employee was visibly present with DiNello during a videoconference with outside counsel. (*Id.* ¶¶ 48–49.) Plaintiff alleges the incident raised a "human resources concern" and a "regulatory concern" about sensitive, "material nonpublic information" being discussed in the presence of a junior employee. (*Id.* ¶ 51.) Plaintiff alleges that he reported the issue to the Chair of the Audit Committee. (*Id.* ¶ 52.)

### D.    The "NYSE Rules Investigation"

Plaintiff alleges that in the summer of 2024, Plaintiff investigated a "possible" or "potential violation" of NYSE rules after Flagstar's AML monitoring processes flagged transactions involving DiNello's personal bank account. (*Id.* ¶¶ 4, 63.) On June 26, 2024, Plaintiff interviewed DiNello about the purported NYSE rule violations and related transactions. (*Id.* ¶ 64.) Plaintiff alleges that "[i]n the wake of this interview," Plaintiff "held a good-faith belief" that the transactions were an attempt to circumvent NYSE rules, as well as that SEC regulations regarding money laundering and insider trading "might be violated." (*Id.* ¶ 69.)

### E.    Plaintiff's Termination

On September 13, 2024, about six weeks after the DiNello interview, Plaintiff's employment was terminated. (*Id.* ¶ 71.)

### F.    Plaintiff's Employment Agreement

Plaintiff's employment with Flagstar was governed by a written employment agreement dated June 14, 2022 (attached as Exhibit A). (*Id.* ¶¶ 74–75.) The agreement provided that Plaintiff was employed at will, subject to certain exceptions, and set forth specific conditions that Plaintiff was required to satisfy before any severance obligation would arise. (*Id.* ¶ 76; Ex. A at 3.) Under

Paragraph 6(a), Flagstar's obligation to provide severance payments was expressly made "[s]ubject to (i) the Executive's timely execution and filing of a Release in accordance with Section [17], (ii) the expiration of any applicable waiting periods contained herein, and (iii) the following provisions of this Section." (Ex. A at 3.) Paragraph 17 reiterated this condition: "[t]he Executive's right to benefits hereunder shall be contingent on his signing and filing the Release as provided in the Release and not revoking the Release within ninety (90) days thereafter." (*Id.* at 8.)

## II.    Procedural History

Plaintiff filed a Complaint in this action on July 29, 2025. (ECF No. 1.) On September 22, 2025, Defendants submitted a pre-motion letter identifying several fatal deficiencies in Plaintiff's claims and requesting a pre-motion conference or, in the alternative, leave to move to dismiss. (ECF No. 17.) On October 7, 2025, the Court directed Plaintiff to file an amended complaint.

Plaintiff filed the Amended Complaint on October 28, 2025. (ECF No. 23.) Plaintiff's amendments were largely cosmetic and failed to cure the defects that Defendants had identified in their pre-motion letter. Accordingly, on November 12, 2025, Defendants requested a pre-motion conference or, in the alternative, leave to move to dismiss the Amended Complaint. (ECF No. 24.) On January 14, 2026, at a pre-motion conference, the Court granted Defendants leave to file the instant Motion to Dismiss. (*See* ECF Nos. 28–29.)

The Amended Complaint asserts four causes of action: retaliation in violation of SOX (Count I); breach of contract under New York common law (Count II); unlawful wage deductions in violation of NYLL § 193 (Count III); and retaliation in violation of NYLL § 740 (Count IV). Defendants now move to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), the "complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A complaint must therefore contain more than 'naked assertion[s]' devoid of 'further factual enhancement.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013) (quoting *Twombly*, 550 U.S. at 557). "Pleadings that contain 'no more than conclusions . . . are not entitled to the assumption of truth' otherwise applicable to complaints in the context of motions to dismiss." *Id.* at 87–88 (quoting *Iqbal*, 556 U.S. at 679).

In resolving a Rule 12(b)(6) motion to dismiss, the Court may consider the Amended Complaint itself, as well as documents "incorporated in it by reference" and documents "integral" to the Amended Complaint—that is, those, Plaintiff knew of and relied on in bringing suit—without converting the motion into one for summary judgment. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016).

The employment agreement attached as Exhibit A satisfies both standards. The Amended Complaint explicitly references the agreement, describes its terms, and predicates the breach of contract claim (Count II) entirely on its severance provisions. (Am. Compl. ¶¶ 75–84.) The NYLL § 193 claim (Count III) likewise depends on the agreement's terms to establish that severance constitutes "wages." The Court may therefore consider the agreement's full terms—including the release conditions in Paragraphs 6 and 17—and where those terms contradict Plaintiff's conclusory allegations of entitlement, the document controls. *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *see also O'Grady v. BlueCrest Cap. Mgmt. LLP*, 111 F. Supp. 3d 494, 500 (S.D.N.Y. 2015); *Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 2011 WL 666187, at *2 (S.D.N.Y. Feb. 9, 2011).

**ARGUMENT**

**I.     The SOX Retaliation Claim Fails Because Plaintiff Does Not Plead Any Instance of Protected Activity Satisfying All Elements Under SOX (Count I).**

To state a SOX retaliation claim, a plaintiff must adequately plead, among other elements, that he engaged in activity protected by the statute. *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 219 (2d Cir. 2014); *see also* 18 U.S.C. § 1514A(a)(1).

Plaintiff's SOX claim rests on three alleged instances of protected activity described above: (1) the BSA tipping incident; (2) the reported HR concern; and (3) the NYSE rules investigation. None of Plaintiff's alleged instances of protected activity satisfies all elements required to state a SOX claim. His claim therefore must be dismissed.

The first element of a SOX whistleblower claim, engaging in "protected activity," requires a plaintiff to show that they (1) "provided information" or assisted in an investigation, (2) regarding conduct they "reasonably believe[] constitutes a violation" of a SOX-enumerated provision of federal law (*i.e.*, only mail fraud, wire fraud, bank fraud, securities fraud, SEC rule or regulation violations, or fraud against shareholders); and (3) did so to a supervisor, federal agency, or member of Congress. 18 U.S.C. § 1514A(a)(1).

The "reasonable belief" standard has both subjective and objective components. *Nielsen*, 762 F.3d at 221. At the pleading stage, a plaintiff must plead sufficient facts to "show not only that he believed that the conduct constituted a violation," but also that a "reasonable person" in the same circumstances and with the employee's training and experience would have believed that the conduct constituted a violation. *Id.* This objective component is not a rubber stamp; the belief must be reasonable, not merely held, and must be plausibly alleged through non-trivial and non-conclusory assertions. *See id.* at 216, 222–24 (affirming grant of Rule 12(b)(6) motion to dismiss where the plaintiff "failed to allege that it was objectively reasonable for him to believe that the

– 7 –

activity he reported constituted a violation of the laws and regulations listed in § 1514A," beyond "trivial and conclusory" allegations).

Conclusory assertions of "fraud" are insufficient; the complaint must plead facts supporting an objectively reasonable belief that the employer violated one of SOX's enumerated provisions. *See id.* at 216, 222–24. Further, SOX protection does not cover general corporate wrongdoing, policy disagreements, or internal compliance disputes without a clear nexus to the statute's specific categories of fraud. *See La Belle v. Barclays Cap. Inc.*, 2024 WL 878909, at *2–3 (2d Cir. Mar. 1, 2024) (explaining that internal policy violations "wholly untethered" from SOX-enumerated provisions cannot sustain a retaliation claim).

Here, none of Plaintiff's alleged instances of protected activity—the BSA tipping incident, the reported HR concern, nor the NYSE rules investigation—satisfy all three sub-requirements for protected activity. In each instance, Plaintiff fails to adequately allege he reported the conduct, tether it to a SOX provision, or demonstrate an objectively reasonable belief of a violation. *See Nielsen*, 762 F.3d at 222.

### A. The BSA Tipping Incident Is Not Protected Activity.

Plaintiff's first alleged protected activity involves an instance in which, after Plaintiff closed a longtime customer's account, Plaintiff learned that DiNello had spoken to that customer. Plaintiff's allegations about this conversation are entirely speculative. He does not allege when the conversation occurred or what was said, offering only the conclusory assertion that "[i]t is likely" DiNello tipped off the client about a monitoring alert and "may also have informed the client that a SAR could be filed." (Am. Compl. ¶ 42.) This incident fails the requirements for protected activity under SOX.

*First*, Plaintiff fails to allege that he actually reported his suspicion of "tipping" to anyone. The Amended Complaint describes only a disagreement with DiNello over the handling of a

customer account, not a report of potential illegality. An employee's mere disagreement with a supervisor on a business matter does not constitute protected activity. *See La Belle v. Barclays Cap. Inc.*, 664 F. Supp. 3d 391, 413 (S.D.N.Y. 2023). And unreported internal conjecture is not whistleblowing. *Henrich v. Ecolab, Inc.*, ARB No. 05-030, 2006 WL 6583249, at *6–8 (ARB June 29, 2006) (explaining that an employee must "actually blow his whistle").

*Second*, even if Plaintiff did adequately allege he reported conduct, that conduct is not covered by SOX. Plaintiff speculates about a violation of the BSA, but a failure to comply with the BSA is not a violation of the mail, wire, bank, or securities fraud statutes, an SEC rule, or any provision of law relating to fraud against shareholders. 18 U.S.C. § 1514A(a)(1); *see Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1099 (S.D. Cal. 2020) ("[F]ailure to comply with the Bank Secrecy Act . . . does not fit § 1514A's categories."). Without tethering the conduct to an enumerated SOX provision, Plaintiff has not alleged protected activity. *See Neilsen*, 762 F.3d at 222.

*Third*, Plaintiff fails to plead an objectively reasonable belief that a SOX violation occurred. His alleged belief is based on what he conjectures "is likely" or "may" have happened. (Am. Compl. ¶ 42.) Such baseless speculation is insufficient to establish an objectively reasonable belief. *Neilsen*, 762 F.3d at 222–24.

The facts in *Nielsen* are instructive. There, the Second Circuit affirmed the dismissal of a SOX claim where the plaintiff offered only "bare and unsupported conclusions" of fraud. *Id.* at 222. The court found the plaintiff had not pleaded an objectively reasonable belief that the defendant engaged in mail or wire fraud because he alleged no scheme to steal money or property. *Id.* Likewise, his claim based on purported shareholder fraud failed because it rested on a "bald statement" of "potential" financial risk to shareholders. *Id.* at 223. Here, as in *Nielsen*, Plaintiff's

– 9 –

allegations lack facts supporting a plausible, objective belief that DiNello's conduct constituted a violation of any specific SOX provision. Accordingly, the unsupported allegation of a BSA tipping incident cannot sustain Plaintiff's SOX claim.

### B.     The Reported HR Concern Is Not Protected Activity.

Plaintiff's second alleged instance of protected activity involves reporting to the Audit Committee Chair a purported "human resources concern" and a "regulatory concern." (Am. Compl. ¶ 51.) This incident also fails as protected activity under SOX.

A generalized "human resources concern" does not implicate any of SOX's enumerated provisions. *See* 18 U.S.C. § 1514A(a)(1). Likewise, vague "regulatory concern[s]" about discussing non-public information are not tethered to mail, wire, bank, or securities fraud, or fraud against shareholders. *See Nielsen*, 762 F.3d at 222–24. Nor does Plaintiff allege any facts showing an objectively reasonable belief that the conduct violated an enumerated provision. *See id.* Without factual allegations connecting this incident to a specific type of fraud or an SEC rule or regulation, Plaintiff's report is not protected activity under SOX.

### C.     The NYSE Rules Investigation Is Not Protected Activity.

Plaintiff's third alleged protected activity concerns an investigation into transfers to and from DiNello's bank account. Plaintiff alleges that after the Bank's AML monitoring program flagged these transfers, Plaintiff investigated DiNello's "possible" or "potential violation of NYSE rules." (Am. Compl. ¶¶ 4, 63.) Following an interview with DiNello, Plaintiff alleges he formed a "good-faith belief" that the transaction was an attempt to circumvent NYSE rules and that "regulations regarding money laundering and/or insider trading might be violated." (*Id.* ¶ 69.) These allegations also fail to plead protected activity.

1. <u>Plaintiff's NYSE Rules Allegations Fail Because NYSE Rules Are Not SEC Rules or Regulations.</u>

To the extent Plaintiff alleges he engaged in protected activity by investigating potential NYSE rule violations, his claim fails for three reasons.

*First*, NYSE rules do not fall in any category of protected disclosure. Section 1514A expressly protects reports concerning violations of "any rule or regulation of the Securities and Exchange Commission," not rules promulgated by self-regulatory organizations such as the NYSE. 18 U.S.C. § 1514A(a)(1); *see also Wadler v. Bio-Rad Labs., Inc.*, 916 F.3d 1176, 1186–87 (9th Cir. 2019) (explaining that "[t]he phrase "any rule or regulation of the [SEC]" should be construed narrowly to refer to SEC administrative rules or regulations). Judges have recognized this distinction, holding that complaints of NYSE rule violations are not SOX-protected. *See Mozingo v. S. Fin. Grp., Inc.*, No. 2007-SOX-00002, 2006 WL 6576823, at *11 (ALJ Dec. 6, 2006) (explaining that "although promulgation of these rules is prescribed by statute and the SEC has authority to review and approve these rules, these rules are made by self-regulatory organizations").

*Second*, even if NYSE rules could fall within SOX's ambit, Plaintiff's conclusory allegations fail to plead a reasonable belief that a violation had occurred. Plaintiff repeatedly describes "potential" or "possible violation[s]" of NYSE rules (Am. Compl. ¶¶ 4, 63), without any facts explaining what conduct was violative or why a belief in a potential or possible violation was reasonable. *See Nielsen*, 762 F.3d at 222–24. Plaintiff alleges in conclusory fashion that he eventually developed a "good-faith belief" that a violation had occurred, but as in *Nielsen*, that bald assertion cannot suffice to sustain his claim. *Id.*

*Third*, Plaintiff pleads no facts demonstrating he reported his purported "good-faith belief" to anyone once formed—which Plaintiff alleges was only *after* he interviewed DiNello. *La Belle*, 664 F. Supp. 3d at 413–14 (finding no protected activity where timeline of purported reporting

contradicted allegations about belief). Plaintiff's mere internal belief is insufficient to constitute protected activity. *See Henrich*, 2006 WL 6583249, at *6–8.

   2. Plaintiff's Money Laundering and Insider Trading Allegations Fail for Multiple Reasons.

Plaintiff's allegations concerning money laundering and insider trading also fail, for three independent reasons.

*First*, Plaintiff never alleges that he actually reported any suspicion of money laundering or insider trading. Plaintiff unambiguously alleges that his "good-faith belief" that money laundering "might be" occurring arose only *after* he interviewed DiNello. (Am. Compl. ¶ 69.) But he alleges no facts showing he communicated this belief to anyone after it was supposedly formed.

*Second*, Plaintiff's money laundering claim is not cognizable under SOX. Section 1514A does not include money laundering statutes in its list of enumerated provisions that can form the basis of a whistleblower claim. *Sharkey v. J.P. Morgan Chase & Co.*, 2013 WL 10796833, at *9 (S.D.N.Y. Mar. 12, 2013) (explaining that "[e]ven if [the] [p]laintiff reasonably believed that [the purported wrongdoer] was engaged in money laundering, such belief cannot form the basis for a SOX whistleblower claim" because "money laundering . . . is not a criminal statute specified in SOX nor is it an SEC regulation or a law relating to fraud against shareholders"), *vacated & remanded on other grounds*, 580 F. App'x 28 (2d Cir. 2014).

*Third*, Plaintiff's insider trading allegation is impermissibly speculative and conclusory. Plaintiff alleges no facts to support a reasonable belief that DiNello possessed, shared, or traded on material non-public information. Instead, he vaguely claims that DiNello's account transfers "raised concerns" that he "could be" using the transfer "to conduct insider trading." (Am. Compl. ¶ 68.) But, like the *Nielsen* plaintiff's bare statement that he "reasonably believed . . . defendants would likely . . . violat[e] the . . . mail and wire fraud statute," Plaintiff's "conclusory statement

cannot sustain [his] § 1514A claim." *Nielsen*, 762 F.3d at 222–23. Further, as in *La Belle*, where the court rejected a plaintiff's attempt to recharacterize an internal business issue as shareholder fraud, Plaintiff here attempts to recast alleged non-fraudulent conduct—NYSE rule violations— as insider trading, without pleading facts that connect the conduct to the elements of such a claim. *See* 664 F. Supp. 3d at 416. Plaintiff's allegations thus fail to plead a reasonable belief of fraud. *see id.*; *Nielsen*, 762 F.3d at 222–24.

## II.    The NYLL § 740 Claim Fails for the Same Reasons (Count IV).

Plaintiff's claim under New York Labor Law § 740 (Count IV) fails for the same reasons as his SOX claim and must be dismissed. To state a claim under Section 740, a plaintiff must allege, among other things, that they engaged in a protected activity by reporting "an activity, policy, or practice of the employer that the employee reasonably believes is in violation of law, rule, or regulation." NYLL § 740. Courts require that a plaintiff plead facts supporting a reasonable belief that the employer's conduct actually violated a particular "law, rule or regulation" at issue; generalized workplace disagreements, internal policy critiques, and compliance-program disputes are not enough. *See Zhang v. Centene Mgmt. Co., LLC*, 2023 WL 2969309, at *17 (E.D.N.Y. Feb. 2, 2023) (holding that even under the amended Section 740, a plaintiff must plead facts supporting a reasonable belief that the employer's identified conduct violated a law, rule, or regulation, and rejecting reliance on generalized objections and non-binding policy guidance); *Cueto v. Jura Pentium Inc.*, 2025 WL 1673221, at *3–4 (N.Y. Sup. Ct. June 13, 2025) (dismissing Section 740 claim where plaintiff alleged disputes over internal policies and compliance practices, reiterating that generalized internal policy disagreements do not satisfy the requirement of pleading a reasonable belief of a legal violation).

Here, Plaintiff relies exclusively on the same allegations underlying his deficient SOX claim, and all three purported instances of protected activity fail. Any retaliation claim based on

– 13 –

the purported "tipping" incident or the NYSE rules investigation fails because Plaintiff does not allege that he reported any concerns to management or a public body, and his allegations amount to internal compliance disagreements that fall outside Section 740. *See supra* Sections I.A & I.C. While Plaintiff alleges he reported the HR concern, he fails to identify any specific law, rule, or regulation that he believed was violated, instead offering only vague and generalized complaints that are insufficient to plead protected activity. *See supra* Section I.B. Because Plaintiff's Section 740 claim rests on the same deficient allegations as his SOX claim—which fail to plead any protected activity—Count IV must be dismissed.

**III.    The Retaliation Claims Fail as to DiNello Individually (Counts I and IV).**

Even if Plaintiff could state a retaliation claim against Flagstar—and he cannot—the claims against DiNello individually must be dismissed because the Amended Complaint does not allege that DiNello was involved in the decision to terminate Plaintiff.

The Amended Complaint is conspicuously silent about who made the termination decision. It does not allege that DiNello made the decision to terminate Plaintiff. It does not allege that DiNello recommended Plaintiff's termination. It does not allege that DiNello participated in, influenced, or even knew about the termination decision before it was made. Indeed, by the time of Plaintiff's termination in September 2024, Plaintiff did not report to DiNello and had not for several months. (*See* NYCB 2023 Annual Report (Form 10-K), at 27.)

This pleading deficiency is fatal as to both retaliation claims. As to the SOX claim, while the statute permits claims against individual "officers" and "employees" of covered companies, *see* 18 U.S.C. § 1514A(a), a complaint must "sufficiently set forth facts 'on its face' that [the named individual] Defendants knew that he had engaged in protected activity, were involved in the alleged adverse employment action, and that a causal connection exits between the protected activity and the adverse employment action taken by the named Defendant." *Wiest v. Lynch*, 15 F.

Supp. 3d 543, 566 (E.D. Pa. 2014) (alteration in original) (citation omitted). "[T]he inferential chain may become too attenuated when the knowledge or identity of the decisionmaker is also left to inference, and all that the plaintiff can allege is knowledge of the protected activity on the part of certain higher-ups who may or may not have been involved in the adverse action." *Id.* Courts therefore routinely dismiss SOX claims against individual defendants where, as here, the complaint fails to allege the individual's involvement in the adverse action. *See id.* (dismissing SOX claim against individual defendants because allegations that one "was personally involved in the potentially illegal activity that [plaintiff] reported," and that plaintiff "brought up his concerns about the violation" to another, were insufficient for individual liability). Because the Amended Complaint does not allege that DiNello participated in the decision to terminate Plaintiff, the SOX claim against him fails.

As to the NYLL § 740 claim, the statute prohibits an "employer" from taking retaliatory action against an employee and defines "employer" as "any person, firm, partnership, institution, corporation, or association that employs one or more employees." NYLL §§ 740(1)(b) & (2). New York courts have consistently held that individual supervisors do not qualify as "employers" under Section 740 unless they exercised sufficient control over the plaintiff's employment to be considered an employer in their own right. *See Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542, (1984) (holding that individual defendants were not "employers" under New York Labor Law where they did not have an ownership interest in the corporate employer). The Amended Complaint does not allege that DiNello, in his individual capacity, was Plaintiff's "employer." Plaintiff was employed by Flagstar, not by DiNello personally. Moreover, by the time of Plaintiff's termination in September 2024, Plaintiff no longer reported to DiNello at all—DiNello had stepped down as President and CEO effective April 1, 2024, and was serving as Non-Executive Charman.

(*See* Am. Compl. ¶ 65; NYCB 2023 Annual Report (Form 10-K), at 27.) But even during the period when Plaintiff did report to DiNello, the mere existence of a supervisory relationship does not make the supervisor an "employer" for purposes of Section 740. Because DiNello is not an "employer" under Section 740 and because the Amended Complaint does not allege his involvement in Plaintiff's termination, the Section 740 claim against him likewise fails.

**IV.    The Breach of Contract Claim Fails for Non-Satisfaction of Conditions Precedent (Count II).**

The Court should dismiss the breach of contract claim because Plaintiff does not allege that he satisfied the express conditions precedent required to receive severance under the employment agreement. Under New York law, a condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995). "Conditions can be express or implied. Express conditions are those agreed to and imposed by the parties themselves." *Id.* New York courts strictly enforce such conditions: "Express conditions must be literally performed; substantial performance will not suffice." *MHR Cap. Partners LP v. Presstek, Inc.*, 912 N.E.2d 43, 47 (N.Y. 2009).

Here, Plaintiff's employment agreement explicitly conditions severance on the execution and return of a general release. Section 6(a) states that severance is "[s]ubject to (i) the Executive's timely execution and filing of a Release in accordance with Section [17], (ii) the expiration of any applicable waiting periods contained herein, and (iii) the following provisions of this Section." (Ex. A at 3.) Section 17 is even more emphatic, declaring in capital letters that "[t]he Executive's right to benefits hereunder shall be contingent on his signing and filing the Release as provided in the Release and not revoking the Release within ninety (90) days thereafter." (*Id.* at 8.) The use of terms such as "subject to" and "contingent on" constitutes "unmistakable language of condition."

– 16 –

*MHR Cap. Partners LP*, 912 N.E.2d at 47.

Courts have consistently dismissed breach of contract claims in materially identical circumstances. In *Napoli v. Deluxe Corp.*, the court dismissed a breach of contract claim for severance and observed that "courts have routinely upheld conditions precedent requiring execution of a release." 2019 WL 2579348, at *5 (E.D.N.Y. June 21, 2019). In *O'Grady v. BlueCrest Capital Management LLP*, the court likewise dismissed a severance claim because the plaintiff "has not alleged that he signed a release, the condition precedent to his receipt of one month of salary as severance." 111 F. Supp. 3d 494, 503 (S.D.N.Y. 2015) (collecting cases). And in *Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, the court dismissed a claim for guaranteed bonus payments where the payments were "clearly conditioned upon [plaintiff's] signing of the firm's standard release," holding that "[a] corporate officer forfeits his right to severance pay by not executing a release required by his employment agreement." 2011 WL 666187, at *3 (S.D.N.Y. Feb. 9, 2011); *see also Munroe v. Truveris Inc.*, Index No. 650454/2017, Doc. No. 155, at 12–13 (N.Y. Sup. Ct. June 12, 2019) (granting defendant summary judgment where employment letter required execution of a general release as a condition precedent; plaintiff did not satisfy the prerequisite and thus was not eligible).

The employment agreement explicitly required Plaintiff to execute and file a release to trigger any severance obligation. But the Amended Complaint does not allege that Plaintiff executed or returned a release to Flagstar. It does not allege that Plaintiff ever offered to sign a release, that Plaintiff requested a release, or that Plaintiff conveyed any willingness to comply with the release condition. And despite having already amended his Complaint once after Defendants identified the release condition as a fatal deficiency, Plaintiff chose not to include any allegations or incorporate any exhibits that would demonstrate satisfaction of this condition. These omissions

– 17 –

are dispositive. Because Plaintiff never satisfied the required release condition, the severance obligation did not arise, and Count II fails as a matter of law.

**V.      The NYLL § 193 Claim Fails Because Contingent Severance Is Not "Wages" (Count III).**

Section 193 of the New York Labor Law prohibits employers from making unauthorized deductions from the wages of an employee except for certain limited categories of deductions not relevant here. Although "[t]he term 'wages' . . . includes benefits or wage supplements," such as separation pay, NYLL §§ 190, 198-c(2), New York courts have consistently interpreted the definition of "wages" to exclude compensation that is "contingent and dependent, at least in part, on the financial success of the business enterprise" or predicated on unsatisfied conditions. *See Truelove v. Ne. Cap. Advisory, Inc.*, 738 N.E.2d 770, 771–72 (N.Y. 2000) (holding that discretionary payments are not "wages"); *see also Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 601 (E.D.N.Y. 2007) ("Incentive compensation and bonuses constitute 'wages' under the NYLL only once they become vested."). It follows that a "plaintiff cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages." *Tierney v. Capricorn Invs., L.P.*, 592 N.Y.S.2d 700, 703 (N.Y. App. Div. 1993); *see also O'Grady*, 111 F. Supp. 3d at 505–06.

The *Cloke-Browne* decision is directly on point. There, the court dismissed a claim for guaranteed bonus payments where those payments were "clearly conditioned upon [plaintiff's] signing of the firm's standard release." 2011 WL 666187, at *6–7. The court held that "[b]ecause Plaintiff's Complaint makes it clear that he has not fulfilled this condition, he fails to state a wage withholding violation claim under New York Labor Law with respect to the bonus payments." *Id.* at *7. The court also distinguished between conditional and unconditional payments, allowing the plaintiff's claim to proceed with respect to deferred compensation that contained "no reference to

a release condition." *Id.* This distinction underscores the critical point: conditional payments do not qualify as "wages" under Section 193 until the conditions are satisfied.

Here, Plaintiff's severance was expressly conditioned on his execution and return of a general release, a condition he does not allege he satisfied. (Ex. A at 3, 8.) Section 193 does not create an independent right to compensation; it merely provides a remedy for deductions from wages to which the employee is already entitled. If the agreement makes severance contingent on a release, then severance is not "earned," "vested," or "due" unless and until the release condition occurs. Without that trigger, there is no "wage supplement obligation" for Section 193 to protect, and the claim should be dismissed as an impermissible attempt to convert a contingent contractual benefit into a statutory wage claim. Thus, because the condition precedent to severance was never fulfilled, it cannot be characterized as "wages" under Section 193. Count III therefore fails as a matter of law and should be dismissed accordingly.

## CONCLUSION

For all these reasons, Defendants respectfully request that the Court grant this Motion and dismiss the Amended Complaint with prejudice and in its entirety.

Respectfully submitted,

Dated: February 13, 2026
New York, New York

_/s/ Terri L. Chase_

Terri L. Chase
Christian A. Bashi
Abigael C. Bosch
JONES DAY
250 Vesey Street
New York, New York 10281
(212) 326-8386
(212) 326-3723
(212) 326-3679
tlchase@jonesday.com
cbashi@jonesday.com
abosch@jonesday.com

_Counsel for Defendants_
_Flagstar Financial, Inc., and Alessandro DiNello_

– 20 –

## LOCAL CIVIL RULE 7.1 CERTIFICATION

I, Abigael C. Bosch, hereby certify that this [Corrected] Memorandum of Law in Support of Defendants' Motion to Dismiss contains 5,933 words, exclusive of the portions exempted by Local Civil Rule 7.1(c), and is compliant with the word-count limitations set forth in Local Civil Rule 7.1.

Dated:   March 19, 2026
         New York, New York

Abigael C. Bosch
JONES DAY
250 Vesey Street
New York, New York 10281
(212) 326-3679
abosch@jonesday.com

*Counsel for Defendants*
*Flagstar Financial, Inc., and Alessandro DiNello*